Eastern District of Kentucky
FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF KENTUCKY
Southern Division**

APR 07 2025

AT LONDON
Robert R. Carr
CLERK U.S. DISTRICT COURT

---

**DUSTIN JOLLY**
**Petitioner,**


vs.                                                   Case No: 17-CR-027-CHB-1

**UNITED STATES OF AMERICA**
**Respondent.**

Respondent.

---

**MOTION FOR REDUCTION IN SENTENCE PURSUANT TO
18 U.S.C. § 3582(c)(1)(A)(i); IN LIGHT OF CHANGES IN LAW**

---

## INTRODUCTION

People grow, mature and evolve, and because conditions and circumstances change, it is virtually impossible to make sound decisions when first imposing sentence about precisely how long someone should spend behind bars. But that is exactly how the federal criminal justice system works. Judges are required to act as if they are omniscient and the prison terms they impose are – for all intents and purposes – final. Mr. Jolly has done everything in his power to rehabilitate himself

as demonstrated by his genuinely exceptional accomplishments and meritorious prison record. He does not seek to justify, diminish, or detract from the seriousness of his offenses. And he unequivocally accepts responsibility for his criminal conduct.

If sentenced today Mr. Jolly would not be sentenced so harshly as he was at the original sentencing. The government moved pursuant to 21 U.S.C. §851 to enhance the mandatory minimum from 5 year to 10 years on the drug count. The mandatory minimum sentence for the conspiracy-to-distribute charge in Count I was five years. See 21 U.S.C. § 841(b). However, as detailed in the Notice by United States Regarding Enhanced Statutory Punishment, [R. 65], Jolly's prior state felony conviction enhanced the mandatory minimum sentence to ten years. See 21 U.S.C. § 841(b)(1)(B). The United States' Notice, as incorporated into the presentence report ("PSR"), identified Jolly's prior conviction as Complicity to Traffic in Controlled Substance (Cocaine) and stated that he was sentenced to five years imprisonment (suspended with five years' probation). If sentenced today that conviction would not be a qualifying conviction for enhanced sentencing purposes. In addition, in light of the First Step Act as to this conviction Mr. Jolly did not serve more than 1 year and 1 day for that conviction, in which also disqualifies that conviction from being a qualifying conviction for enhanced sentencing purposes.

## **FACTS**

On November 16, 2017, a federal grand jury issued a Superseding Indictment charging Dustin Jolly with conspiracy to distribute fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count I); possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) (Count II); and possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count III). [R. 26]. Jolly pleaded guilty to Counts I and II of the Superseding Indictment on April 9, 2018. [R. 73; R. 74].

The mandatory minimum sentence for the conspiracy-to-distribute charge in Count I was five years. See 21 U.S.C. § 841(b). However, as detailed in the Notice by United States Regarding Enhanced Statutory Punishment, [R. 65], Jolly's prior state felony conviction enhanced the mandatory minimum sentence to ten years. See 21 U.S.C. § 841(b)(1)(B). The United States' Notice, as incorporated into the presentence report ("PSR"), identified Jolly's prior conviction as Complicity to Traffic in Controlled Substance (Cocaine) and stated that he was sentenced to five years imprisonment (suspended with five years' probation). [R. 65; R. 114–2]. Jolly did not object to the PSR or the underlying Notice at sentencing. [R. 112, p. 13]. As to Count I, both parties argued for a downward variance from the Guideline Range of 151 to 181 months imprisonment, and the Court agreed. Id. at

3

15, 32. On August 7, 2018, this Court sentenced Jolly to the mandatory minimum of ten years imprisonment for conspiracy to distribute, Count I, and a mandatory consecutive five-year imprisonment for the firearm possession charge, Count II, for a total sentence of 180 months. [R. 91]

## ARGUMENT

There is no excuse for his actions, however, Mr. Jolly submits that the current sentence is longer than necessary in this case to achieve the objectives that a sentence be sufficient but not greater than necessary, to achieve the goals of sentencing as spelled out in 18 U.S.C. § 3582.

Jolly's sentence is also extraordinary for what caused it. Jolly received such a long sentence due to a mandatory sentencing scheme under 21 U.S.C. §851 a sentencing provision that no longer exist. If Jolly had been sentenced today, he would not have faced a mandatory 10 years as to the drug conviction.

Serving an original sentence of 15 years imprisonment was not easy for Mr. Jolly to accept and deal with. Mr. Jolly used his time in prison productively, and committed himself to changing his character. Entering prison with a 15 years was not easy. There were two roads for Jolly to choose from, one was a road of mischief and trouble. The other was a road of self-betterment and rehabilitation.

4

Jolly chose a road of self-betterment. In his pursuit of rehabilitation, he made exceptional strides in bettering himself. He has completed numerous rehabilitative programs. This shows his commitment to waking up every morning and going to work demonstrating his effort at real life skills training.

His record of rehabilitation can be considered extraordinary. Jolly submits that he is no longer the man who made irrational and irresponsible choices to engage in criminal conduct, and that there is no concern that he would be a danger to the public if released. This is because he has learned to respect the rule of law, in conjunction with his rehabilitation.

See Lois M. Davis, et al., Evaluating the Effectiveness of Correctional Education: A Meta-Analysis of Programs That Provide Education to Incarcerated Adults, RAND CORP. (2013) (explaining, a meta-analysis of studies that evaluated correctional education and post-release recidivism found that "on average, inmates who participated in correctional education programs had 43 percent lower odds of recidivating than inmates who did not"). Jolly has used his time in prison wisely to gain valuable knowledge and skills that will allow him to contribute to society upon his release.

5

Another factor that this Court can consider in its assessment as to whether or not a sentence reduction is appropriate in this case is the living conditions that Jolly lived under during the COVID-19 pandemic, and the dangers to prisoners associated with it.

Mr. Jolly's imprisonment for the entirety of the COVID-19 pandemic was unusually harsh. It included extensive and extended lockdowns during which (among other things) he was not permitted outside his cell except for very limited periods of time and for very limited purposes. Family visitation was suspended for long stretches of time. He had only limited access to Corr Links and therefore was unable to communicate with family and friends during an intensely frightening time. Access to counsel was severely restricted. Access to religious services/clergy was virtually non-existent. And the BOP suspended all rehabilitative programming. Perhaps most significantly, Mr. Jolly suffered severe isolation because of the quarantines and extended lock-downs that the BOP imposed as part of its (largely ineffective) efforts at controlling the spread of COVID-19, all the time worrying that he might "contract[] a once-in-a-century deadly virus." United States v. Johnson, Case No. 16-CR-319 (NGG), 2023 WL 3093617 (E.D.N.Y. Apr. 26, 2023). (Due to the prison, he is housed in he is still under extreme lock-downs due to the violence at the prison, and deplorable conditions.)

Such conditions of confinement and still others, all arising from the COVID-19 pandemic, made the conditions of confinement that Mr. Jolly endured over the

past four-plus years far harsher than what the Court could possibly have imagined

at sentencing – a COVID-19- related factor that numerous courts have found can

contribute to a finding of "extraordinary and compelling reasons" for a sentence

reduction, particularly for offenders (like Mr. Jolly) who were incarcerated for the

entirety of the COVID-19 pandemic. See Reynolds v. United States, Case No. 99-

CR-520 (NGG), 2022 WL 1444167, at 4-6 (E.D.N.Y. May 6, 2022) (finding that

the harsh conditions of confinement arising from the COVID-19 pandemic,

combined with the offender's age and substantial rehabilitation, constituted

"extraordinary and compelling reasons" for a sentence reduction); United States v.

Lora, Case No. 16-CR-44 (KPF), 2022 WL 1055749, at *5  6 (S.D.N.Y. Apr. 8,

2022) ("[P]andemic-induced conditions of confinement may constitute

'extraordinary and compelling' circumstances warranting compassionate release,

particularly for defendants who have (i) served long sentence and (ii) been

detained for the entirety of the pandemic"); United States v. Miranda, Case No. 12-

CR-256 (GAG), 2021 WL 4592528, at *10 (D.P.R. Aug. 30, 2021) ("pandemic

conditions and [the offender's] medical history have made his punishment via

confinement to this point harsher than it otherwise would have been").

   United States v. Rodriguez, No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *3

(S.D.N.Y. Sept. 30, 2020); see also United States v. Mcrae, No. 17 Cr. 643 (PAE),

2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under

extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing."); *United States* v. *Ciprian,* No. 11 Cr. 1032-74 (PAE), 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021) (same).

In addition, Mr. Jolly's mother needs a primary care provider and there is no one that can assist her in that regard. Jolly is the only person that can be his mother's primary care provider. His mother Shirly Jolly is 74 years old and has extreme arthritis and cannot lift anything or cook for herself. Due to the pain, she also has trouble bathing and cannot get too much needed appointments. She also has COPD and is on Oxygen. There is no family near her that can assist her. See Exhibit A.

*United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019), "...This Court rules that Mr. Bucci's role as the only potential caregiver for his ailing mother is an "extraordinary and compelling reason" for compassionate release. See U.S.S.G. § 1B1.13(1)(A). Further, the documents submitted to the Court show that he has demonstrated rehabilitation through his substantial time in prison, including by devoting much of his time to care for terminally ill inmates." In United States v. Hernandez, 2020 US Dist. LEXIS 135952, 2020 WL 4343991, at 1 (S.D. Florida 4-3-20). See United States v. Wooten, 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020) in Wooten the Court granted compassionate release to a defendant based, in

part, on that defendant's role as the only available caregiver for his mother and sister. See Wooten at *7. In Wooten, the Court explained that "no single factor in Wooten's case amounts to an 'extraordinary and compelling reason' warranting his release," but that a combination of factors added up to such a reason. Id. First, and most important, was "Wooten's status as the only available caregiver for his aging mother and disabled sister." United States v. Yoda, No. 15 CR 95, 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020). Indeed, when the court "receive[s] evidence from several sources" indicates that the defendant "is the only available caregiver" for a family member in "dire conditions," an extraordinary and compelling reason has been established. United States v. Lisi, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020).

Changes in law that apply to Mr. Jolly. As stated above, if sentenced today Mr. Jolly would not be subjected to the enhanced 10-year term of imprisonment as to the drug count. That would be 5 years if sentenced today with an additional 5 years regarding the 924 (c) count. See United States v. Havis, 927 F.3d 382 (6th Cir. 2019) (en banc). Havis Held That "Attempt" Crimes Do Not Qualify In Havis, the Sixth Circuit ruled that attempt crimes do not qualify as "controlled substance offenses" under U.S.S.G. § 4B1.2 because the Guidelines define such offenses as those involving "manufacturing, distributing, or possessing with intent to distribute" a controlled substance—without including inchoate offenses like

9

attempt. Kentucky's Complicity Statute Includes Attempt Liability Under Kentucky law, complicity (Ky. Rev. Stat. § 502.020) can be satisfied in multiple ways, including aiding and abetting or attempting to commit the crime. Since attempt-based complicity is covered under Kentucky's definition, a conviction for complicity to traffic cocaine could include conduct that does not meet the federal definition of a "controlled substance offenses. Sixth Circuit's Broad Interpretation of Havis Post-Havis cases in the Sixth Circuit have struck down various state statutes that include inchoate liability, even where aiding and abetting is included, because Kentucky's complicity law does not distinguish between aiding and abetting and attempt. Because complicity in Kentucky includes attempt, and *Havis* ruled that attempt-based crimes are **not** qualifying controlled substance offenses, Complicity to Traffic in a Controlled Substance (Cocaine) under Kentucky law does not qualify as a "controlled substance offense" for sentencing enhancements in the Sixth Circuit.

Mr. Jolly submits that he is no longer a threat to public safety and the conviction in this case is a clear deterrent from committing crimes for not only Jolly but others as well. In terms of both specific and general deterrence, there is overwhelming evidence in scientific literature that the certainty of being caught is a vastly more powerful deterrent than the [severity of the] punishment. United States v. Browning, 2021 U.S. Dist. LEXIS 38058, at *12-13 (E.D. Mich. Mar. 2, 2021). Browning quotes the findings made by the United States Department of

Justice (DOJ) article entitled, "Five Things About Deterrence 1, at 12-13 (2016), which states:

> Severity refers to the length of a sentence. Studies show that for most individuals convicted of a crime, short to moderate prison sentences may be a deterrent but longer prison terms produce only a limited deterrent effect.

> Certainty refers to the likelihood of being caught and punished for the commission of a crime. Research underscores the more significant role that certainty plays in deterrence than severity — it is the certainty of being caught that deters a person from committing crime, not the fear of being punished or the severity of the punishment. Effective policing that leads to swift and certain (but not necessarily severe) sanctions is a better deterrent than the threat of incarceration. In addition, there is no evidence that the deterrent effect increases when the likelihood of conviction increases. Nor is there any evidence that the deterrent effect increases when the likelihood of imprisonment increases.

> See also Daniel S. Nagin, Deterrence in the Twenty-First Century, 42 Crime & amp; Just. 199, 201 (2013) ([T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased [by longer sentences]). All of these

circumstances lead Jolly to seek a sentence reduction under the federal compassionate release statute. See 18 U.S.C. § 3582(c)(1)(A)(i).

After the changes made to the compassionate release statute by the First Step Act, district courts no longer require a motion from the Director of the Bureau of Prisons to resentence federal prisoners under 18 U.S.C. § 3582(c)(1)(A)(i). This Court may resentence if a prisoner files a motion and establishes extraordinary and compelling reasons for a sentence reduction.

Those extraordinary and compelling reasons are present here because Jolly was given an unusually long sentence under a peculiar statutory provision that Congress has since amended because it was too punitive; and he has compiled a remarkable record of rehabilitation showing that, if released, he is no danger to the public.

Moreover, See Concepcion v. United States, 597 U.S. __ (2022). Moreover, Concepcion affirmed district courts' discretion to consider any relevant information in resentencing, bounded only when Congress or the Constitution expressly limits the type of information that may be considered in modifying a sentence. Nothing in 18 USC 3582(c)(1)(a) supports the notion that non-retroactive changes are excluded from being "extraordinary and compelling." Justice Sotomayor writing for the court

stated, "The question in this case is whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion. The Court holds that they may. It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained. Nothing in the First Step Act contains such a limitation.

Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them. By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments. The District Court in this case declined to consider petitioner Carlos Concepcion's arguments that intervening changes of law and fact supported his motion, erroneously believing that it did not have the discretion to do so, and the Court of Appeals affirmed. The Court now reverses."

This makes clear that this Court has the authority to determine if and what extraordinary circumstances are and reduce Mr. Jolly's sentence if the Court so chooses. Mr. Jolly is asking this Court to do what many courts have done - that is given people a second chance to reclaim their lives.

Federal Judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that BOP once held under the pre- First Step Act compassionate release statute as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

Mr. Jolly has properly exhausted his claim for a reduction of sentence under the compassionate release provision, and he presents this Court with extraordinary and compelling reasons for reducing his sentence. See Exhibit B.

Jolly has filed a request for a reduction of sentence under the compassionate release statute with the warden, Exhibit B. The BOP has not filed a motion within 30 days with the Court regarding Jolly's request; thus, Jolly has properly exhausted his claim. See 18 U.S.C. § 3582(c)(1)(A) (courts can reduce a sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies). All the First Step Act requires is the 30-day time frame - the

text of the legislation makes this clear. See ***United States v. Rita Gluzman***, 2020 WL 4233049, (SDNY 7-23-20).

Some people do change, and when that change has been made, federal tax dollars should not be wasted on overincarcerating our citizens. At the time of sentencing what decision makers cannot measure is the capacity for people to change. However, some people do. Mr. Jolly is one of those people. President Trump himself acknowledged that people do change, and he did so when he released Alice Marie Johnson from the life sentence that was imposed on her. We also saw Matthew Charles released from prison based on the *First Step Act* - and it was President Trump who invited Mr. Charles to the State of The Union Address. When the Court originally sentenced Mr. Charles to 35 years in prison, it could not have foreseen the changes that he made in his life - never receiving a disciplinary report while in prison, helping others with their legal pleadings, studying the bible, teaching GED classes. Mr. Charles changed his character so much that the President invited this man to the State of the Union address. Mr. Charles' original sentence of 35 years was largely driven because of his criminal history. At the time of sentencing, the sentencing judge explained that Mr. Charles had "a particularly violent history" and "had demonstrated by his actions that he's a danger to society and should simply be off the streets." ***United States v. Charles***, 843 F.3d 1142, 1145, (6th Cir. 2016), (Dkt. # 96 Sentencing Transcript @ page 283). That history

included "kidnapping a woman on two consecutive days for the purpose of terrorizing her; burglarizing a home; fleeing from a police interrogation, shooting a man in the head, and attempting to run off in the victim's car. Mr. Charles is now a free man living a law-abiding life despite this record, after having served 21 years in prison. However, this is an example that people do change and do deserve second chances. Mr. Jolly is one of them people.

Mr. Jolly has a family that loves and cares for him. They are ready and willing to assist Jolly with a successful reentry. He has maintained strong ties and support with both family and friends. If he is released Mr. Jolly would be living with his mother Shirley Jolly at 1135 E Lakeshore Dr. Burnside, KY 42519.

Jolly submits that he is no longer a threat to public safety. The biggest indicator of this is his commitment to rehabilitation, and dramatic character change. The Court should also consider whether, upon release, the defendant would pose "a danger to the safety of any other person or to the community." This Court is not faced with a stark choice between simply turning Jolly loose, or continuing his incarceration. The Court has the option of reducing Jolly's period of incarceration, followed by a term of supervised release.

Supervised release, which is laid out at 18 U.S.C. § 3583, was created by Congress as "a form of post confinement monitoring overseen by the sentencing court." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000). As the Supreme

16

Court has explained, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends," providing "individuals with post confinement assistance" through the supervision of the court. *United States v. Johnson*, 529 U.S. 53, 59 (2000). "The court can provide such assistance because, '[w]hile on supervised release, the offender [is] required to abide by certain conditions,' *Johnson v. United States*, 529 U.S. at 697, such as regularly reporting to a probation officer, pursuing schooling or work, and refraining from further criminal activity, *see* U.S.S.G. § 5D1.3(c); 18 U.S.C. § 3583(d)." *United States v. Island*, 916 F.3d 249, 253 (3d Cir. 2019). Congress has also authorized supervising courts to revoke supervised release and order re-imprisonment when defendants fail to meet their release conditions. *See* 18 U.S.C. § 3583(e); *Johnson v. United States*, 529 U.S. at 697.

Supervised release is routinely imposed as a component of sentencing, including sentences for crimes far more serious than those of which Jolly has been convicted. Supervised release affords the court an array of conditions which it can impose, the defendant's compliance with which will be monitored by a probation officer. New conditions can be added as necessary. Beyond the low risk that Jolly now presents, whatever risk there is can be further mitigated by supervised release. *See United States v. Williams*, No. 04cr95, 2020 WL 1751545, at *3 (N.D.Fla. Apr. 1, 2020) (although court could not conclude that defendant posed no risk at all

to public safety, "the risk of him engaging in further criminal conduct is minimal and can be managed through home confinement and the terms of his supervised release."

There are numerous factors that demonstrate extraordinary and compelling reasons to reduce the sentence in this case. Those are the changes in law, the extraordinary rehabilitation in this case, the need for a primary care provider for his mother, the COVID-19 pandemic and the living conditions that Jolly has been under since the pandemic.

## **CONCLUSION**

Mr. Jolly is asking this Court for compassion, and in asking for that compassion he asks that this Court exercise the enormous power given back to federal sentencing judges by Congress.

This request for compassionate release is a request for a second chance for Mr. Jolly to reclaim his life.

Respectfully Requested,

Dustin Jolly

Dated: April 15, 2025

## **CERTIFICATE OF SERVICE**

    I, Dustin Jolly hereby certify that on this 1st day of April 2025, I did place

the enclosed Motion Pursuant to 18 U.S.C. § 3582, in the prison mailing system

addressed to the following parties:

           United States Court of Appeals
           Court Clerk
           310 South Main Street
           London, KY 40741

           United States Attorney's Office
           VIA ECF


Signed under the penalty of perjury

this 1st day of April 2025

                    Dustin Jolly